No. 2528.

MISSOURI PACIFIC RAILWAY COMPANY v. A. J. McELYEA.

1. MASTER AND SERVANT—REGULATIONS.—A railway company can not relieve itself from liability for an injury to an employo resulting from a failure on its part through it agents actually to use such care for the safety of employes as the law makes it necessary for such a master to use by making and enforcing regulations, unless the regulations be such and their enforcement so complete as to result in the actual use of due care.

2. SAME—REGULATIONS—MACHINERY.—A railway company may make regulations requiring the most rigid and frequent inspections of its machinery, road bed and equipments, and the most prompt and complete repair of any ascertained defect, and may impose penalties of discharge, etc., for failure to comply, yet if the agent authorized to do what the master must do to avoid liability fails to discharge his duty, then the master is liable to an employe who suffers injury through such neglect.

3. NEGLIGENCE.—See facts sufficient to support a verdict for damages from negligence of defendant.

APPEAL from Anderson. Tried below before the Hon. F. A. Williams.

This is an appeal from a judgment for seven thousand dollars, rendered May 2, 1887, in favor of appellee for damages for personal injuries received by him March 5, 1887, on the road of appellant near Nechesville by reason of an alleged defective engine and tender which ran off the track and was turned over.

The errors assigned and argued by the appellant relate to the refusal of a special charge asked by it and the insufficiency of the testimony to want of care on part of the defendant company in the particular matter complained of.

The facts are sufficiently given in the statement in the brief of appellant, which is given.

*John Young Gooch,* for appellant: 1. The court erred in refusing the special charge requested by the defendant.

Appellee was a section boss, and at the time of his injury was with his crew being conveyed on an engine and tender, furnished by appellant, to a wreck on the road. About two miles from the section house the engine and tender ran off the track and were upset, and appellee seriously injured. There was evidence tending to show that the accident was caused by a brake shoe falling on the track from its place on the engine, where it should have been fastened, and being struck by a wheel of the engine. The brake shoe is a piece of iron about twelve inches long, one and a half inches thick, four inches wide and weighs about eight pounds—it is an arc of a circle equal to that described by the car wheel, and is just in front of the wheel, about three inches from it, and is used to check the speed by pressing it against the wheel by means of a brake wheel, beam, etc. There is a brake shoe at each end of the beam, and it is fastened to the beam by screws. The uncontradicted evidence is that the road bed and track were in good order, and that appellant's employes were competent. A broken brake shoe was found near where the engine ran off and a part of the flange of a wheel was freshly broken off, and the witnesses thought that the wheel ran over or on a piece of metal before going off the track. There was no evidence of any defect in the engine and tender except that tending to show that the brake shoe was loose, and that its falling

on the track just in time to be struck by the wheel caused the derailment. There was evidence, however, that the same engine had run off the track on three other occasions, but it was not shown that it was caused by any defect of the engine.

Appellant proved that it was a rule of the company to require engineers to inspect their engines and to report all defects; that this engine was inspected by the engineer in charge about an hour and a quarter before the injury, and that six or eight weeks before the accident this engine had been overhauled and repaired in the shops and turned out sound, and that it was of good make and of good material.

The following charge was refused: "The defendant was under obligation to the plaintiff to use reasonable care to provide and maintain in proper condition a safe and suitable engine, road bed and other appointments, and is liable to him for an injury resulting from defects which were known to the company or which were discoverable by reasonable care. But if the company exercised reasonable care by making and enforcing suitable regulations, which would ordinarily keep the machinery, road bed and appointments in safe and proper condition, it is not liable for an injury resulting from defects in either. It does not warrant their completeness nor warrant against defects, but it is bound to use only reasonable efforts to try to discover and repair defects. If it does this it is not liable for a failure to discover or repair an unknown defect."

The court gave no charge as to the effect of appellant making and enforcing suitable regulations which would ordinarily keep the machinery, etc., in good repair, but charged as follows as to any negligence of appellee's fellow servants: "If defendant failed to exercise through its servants, whose duty it was to do so, the proper care to see to the condition of the machinery and keep it in good repair, its failure to do so would not be excused or obviated by the fact that its servants, whose office it was to perform that duty, were competent. But such a failure of duty on the part of the servants would be regarded as that of defendant." (Wood's Master and Servant, sec., 347; Malone v. Hathaway, 64 N. Y., 5; 21 Am. Rep., 573 and note.)

The verdict is unsupported by the evidence, in that there is no sufficient proof of negligence of appellant, the uncontradicted evidence showing it had observed proper and reasonable care and precautions to discover and repair any defects,

and that if there was any negligence, it was the negligence of appellee's fellow servants, for which appellant is not liable.

*W. Q. Reeves,* for appellee: The appellant is liable for injuries to servants from defects in his machinery which reasonable care would have discovered and repaired and this duty to discover and repair is not discharged by "making and enforcing suitable regulations which would ordinarily keep the machinery in safe and proper condition," but when he delegates his duty of keeping in repair to another he is liable for his agent's neglect as of his own, and such agent is not the fellow servant of the injured servant. The special charge was properly refused. (H. & T. C. Ry. Co. v. Marcelles, 59 Texas, 334; H. & T. C. Ry. Co. v. McNamara, 59 Texas, 255; I. & G. N. and M. P. Ry. Co. v. Kindred, 57 Texas, 501, 502; H. & T. C. Ry. v. O'Hare, 64 Texas, 600; N. P. R. R. v. Herbert, 116 United States, 642; 100 United States, 213; Woods's Railway Law, vol. 3, sec. 377, p. 1469; Fuller v. Jewett, 80 N. Y., 46, limiting Malone v. Hathaway, 64 N. Y., 5; Id., 36 Am. Rep., 575; Whart. on Neg., secs. 211, 212; Cooley on Torts, p. 558, sec. 5, p. 561; Moak's Underhill on Torts, 47; Railway Ac. Law, Patterson, secs. 308, 309, and authorities.)

The evidence shows that plaintiff was injured by reason of the falling of the brake shoe on the rail; that if properly fastened it would not have fallen; and further shows that reasonable care would have discovered and repaired the defect.

STAYTON, CHIEF JUSTICE. The appellee was a "section boss" in the employment of the appellant company, and with the men under his control was being transported on an engine and tender from the section house to a place on the road at which a wreck had occurred, when the engine and tender were derailed and the appellee thereby seriously injured.

The evidence tends to show that the derailment was caused by a brake shoe falling from the brake beam just in advance of a car wheel which was thereby forced from the track. The evidence further tends to show that had the brake shoe been properly fastened it could not have fallen, and that its fastening is so made as to render any defect therein easily observed. It is claimed that the engine and tender were inspected but a short time before the accident, and that they were both then in good order; but there is evidence showing that on that in-

spection machinery, constantly in sight of the engineer who made the inspection, was not seen by him to be out of order, though a material part of it was missing.

There was other evidence introduced tending to show that the engine was otherwise out of order and was considered dangerous, and that it had left the track on several occasions but a short time before.

It is urged that the evidence was not sufficient to sustain the verdict. There was much evidence, consisting mainly of statements that the engine and tender were in good order, and that they were frequently inspected, but all this was for the consideration of the jury; and, in view of the direct proof of defects such as caused the accident, and of the patent character of the defect proved, we can not say that the conclusion of the jury is not well sustained by the evidence, involving as it does the declarations that the machinery was defective, that the accident resulted from the defect, and that the exercise of that care required of the appellant for the safety of its employes would have prevented the accident.

It is urged that the court erred in refusing to give a charge asked by the appellant. The charge requested was as follows:

"The defendant was under obligation to the plaintiff to use reasonable care to provide and maintain in proper condition a safe and suitable engine, road bed and other appointments, and is liable to him for an injury resulting from defects which were known to the company, or which were discoverable by reasonable care. But if the company exercised reasonable care by making and enforcing suitable regulations, which would ordinarily keep the machinery, road bed and appointments in safe and proper condition, it is not liable for an injury resulting from defects in either. It does not warrant their completeness nor warrant against defects, but it is bound to use only reasonable efforts to try to discover and repair defects. If it does this it is not liable for a failure to discover or repair an unknown defect."

The court below very carefully and correctly instructed the jury as to the degree of care necessary to be used by railway companies in the conduct of their business, and then proceeded to charge the jury as follows: "If you find from the evidence that the engine or tender, or both, upon which the plaintiff was riding when hurt was out of repair and defective, and that such condition resulted from a failure of the defendant to use

the care hereinbefore defined as incumbent upon it, or that it was such that the defendant, by the exercise of proper care, ought to have discovered and remedied it; and that, as the proximate result of the defective condition of the engine and tender, or either of them, plaintiff sustained the injuries of which he complains, then plaintiff is entitled to recover; but if neither the engine nor tender was defective, then plaintiff can not recover, though they may have run off the track and hurt him; and, again, if the engine or tender, or both, were defective, but if such defect was not the result of a want of proper care on the part of defendant, and if it was not such as the exercise of proper care by defendant would have discovered and remedied, then also defendant would not be liable. "

The charge of the court presented the law of the case clearly and fully upon all the points to which the refused charge related, and if it had been strictly correct, the failure to give it would not be ground for reversal. The charge asked, however, would have relieved the appellant from liability if it exercised reasonable care in a named particular, i. e., in making and enforcing regulations which would ordinarily keep the machinery, road bed and appointments in safe and proper condition. A railway company can not relieve itself from liability for an injury to an employe, resulting from a failure on its part, through its agents, actually to use such care for the safety of employes, as the law makes it necessary for such a master to use by making and enforcing regulations unless the regulations be such and their enforcement so complete as to result in the actual use of due care.

Such a master may make rules and regulations for the conduct of its business and agents, who are in law deemed its representatives, as will ordinarily secure faithful service for such agents, and yet be responsible to an employe for injury resulting from a failure of such agent actually to use the care the law requires of the master.

It may make regulations requiring the most rigid and frequent inspections of its machinery, road bed and equipments, and the most prompt and complete repair of any ascertained defect, and for a failure of its agents to comply with such regulations may make and enforce an absolute rule that a failure rigidly to comply with any of these regulations will be followed by the immediate discharge of the delinquent and forfeiture of wages earned or other penalty, and these regula-

tions may be sufficient if rigidly enforced to secure ordinarily a faithful performance of duty; but if, notwithstanding such regulations and their enforcement, the agent, authorized to do what the master must do to avoid liability, fails to discharge, his duty, then the master is liable to an employe who suffers injury through such neglect.

The court did not err in refusing to give the charge requested.

There is no error in the proceeding that led to the judgment and it will be affirmed.

*Affirmed.*

Opinion delivered October 12, 1888.